United States District Court for District of New Jersey

| | |
|---|---|
| J.V. [a minor] by her Guardian Ad Litem Juan Valdez, and Juan Valdez, Nora Valdez, individually and "B.V." [a minor], by his Guardian Ad Litem Juan Valdez,<br>                              Plaintiffs<br><br>vs.<br><br>Macy's Inc., Thyssen Krupp Elevator America Inc., John Doe 1-10 (fictitious names), and ABC Corp. 1-10 (fictitious names),<br>                              Defendants. | Case No.<br><br>Civil Action<br><br>**Complaint and Jury Demand** |

Plaintiffs J.V.[a minor] by her Guardian Ad Litem Juan Valdez, and Juan Valdez, Nora Valdez, and B.V. [a minor] by his Guardian Ad Litem Juan Valdez, individually, complaining of the Defendants, set forth as follows:

### Jurisdiction and Venue

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the parties are domiciled in different states.  Plaintiffs reside in New Jersey; the Defendants are incorporated or maintain principal places of business in other states.  Plaintiffs allege compensatory damage claims, excluding fees and costs, in excess of the jurisdictional minimum of $75,000.00.

2.  Venue is proper in this court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District where the Defendants are subject to the personal jurisdiction in accordance with 28 U.S.C. § 1391(c).  Plaintiff J.V. resides in Bergen County, New Jersey, suffered severe injuries in Bergen County and has received all of her medical care for those injuries in Bergen County.  The premises where Plaintiff suffered her injuries are also in Bergen County.

**Parties**

3. Plaintiff J.V. is a ten-year old girl, her Guardian Ad Litem Juan Valdez is her father, Nora Valdez is her mother, and "B.V." is her eight year-old brother. Together the family lives at 15 East Church Street, Bergenfield, Bergen County, New Jersey.

4. Defendant Macy's Inc. (hereinafter "Macy's") is a Delaware corporation, with its principal place of business in Cincinnati, Ohio, and doing business in the State of New Jersey at the Garden State Plaza Mall, 1 Garden State Plaza, in the Borough of Paramus, Bergen County, New Jersey.

5. Macy's is the exclusive leasee, owner and/or operator of a retail department store at the Garden State Plaza Mall.

6. Macy's is the owner, supervisor and operator of a Westinghouse Model 48L escalator in its Garden State Plaza Mall store that caused severe and permanent injuries to the Plaintiffs.

7. Defendant Thyssen Krupp Elevators America (hereinafter "Thyssen") is a domestic corporation with corporate headquarters located at 11605 Haynes Bridge Road, Suite 650, Apharetta, Georgia 30009 doing business in the state of New Jersey with a branch and service location at 245 Braen Avenue, Wyckoff, New Jersey 07481.

8. Thyssen is the maintenance contractor that is responsible for the inspection, maintenance and repair of Macy's escalators at the Garden State Plaza Mall store.

9. Thyssen escalator mechanics had inspected and/or repaired the Macy's escalator shortly before August 16, 2013.

10. Defendants John Doe 1-10 and ABC Corp. 1-10 are fictitiously named defendants whose identities are presently unknown to Plaintiffs.

**Facts**

11. On August 16, 2013, J.V. got her right foot trapped, crushed and torn apart in Escalator #2 in Macy's at the Garden State Plaza as her mother and little brother B.V. looked on in helpless horror.

12. The escalators operating in Macy's at the Garden State Plaza were installed in or about 1958, and are among the oldest, if not the oldest, operating escalators in all of New Jersey, and are among the last of their generation still operating throughout the United States.

13. Macy's has a history of foot and leg entrapments with their escalators throughout the country. They are also aware of numerous prior entrapments at their Garden State Plaza location.

14. Outdated escalator units are inherently dangerous and Macy's knew or should have known that it was operating a defective piece of equipment. The smooth-faced risers on the Westinghouse model 48L are known to enhance the likelihood of entrapment when they come into contact with rubber soles.

15. On August 16, 2013, J.V. was on pre-school term shopping trip and riding the Macy's escalator to an upper floor with her mother Nora and her brother B.V. at about 11:00 AM. She was wearing proper and appropriate footwear, namely Converse high top sneakers that were laced and tied.

16. J.V. was standing on a step below her mother, Nora; her brother B.V. also stood on a step behind his mother.

17. As the family ascended almost to the top of the escalator, the escalator mechanism trapped J.V.'s right foot.

18. The escalator continued climbing towards the jagged comb plate while J.V.'s frantic efforts to pull her foot free were to no avail, as more and more of her foot, and then her lower leg, became trapped in the still moving escalator mechanism.

19. J.V.'s mother Nora also desperately tried in vain to get her daughter's leg out, as J.V. screamed and cried for her mother's help.

20. The escalator continued moving and entrapping more of J.V.'s leg until the multiple jagged teeth of the comb plate trapped J.V.'s foot and leg while the escalator stairs continued pulling her leg deeper and deeper into the comb plate and upper assembly of the escalator mechanism.

21. J.V.'s mother looked on helplessly as her efforts to free her daughter's leg did nothing, copious amounts of J.V.'s blood and tissue were distributed over at least eleven (11) steps as the escalator continued grinding up against J.V.'s trapped foot and leg, all the while with Nora fearing that her daughter's leg was literally being amputated by relentless movement of the escalator.

22. While J.V.'s foot and leg were pinned and her skin and bone torn in the escalator mechanism, a male passerby stopped the escalator with the emergency stop switch located at the bottom of the escalator, and then rushed to help the terrified and entrapped child.

23. Another passerby also stopped to help, and together the two men began to remove metal plates from the escalator in an effort to extricate J.V.'s leg that had been pulled in so far that it was now trapped about halfway between her right ankle and knee.

24. Police and emergency personnel arrived and took over from the civilians, ultimately freeing J.V.'s ravaged leg from the escalator mechanism.

25. Emergency medical technicians and paramedics rushed her to the Hackensack University Medical Center where she has undergone a series of thirteen (13) orthopedic, vascular and plastic surgeries in an effort to save her foot and leg.

26. The extreme damage to her foot and leg required the insertion of an external fixation device, which was drilled into J.V.'s foot and ankle. Because of the near total destruction of the tissue on the dorsum of the foot, a transplantation of muscle from J.V.'s back was performed. If this "free flap" takes, then J.V. will require additional skin grafting.

27. The trauma doctors were not able to save J.V.'s badly mutilated pinky and second toes.

28. These injuries will leave J.V. permanently disfigured, disabled and with the significant risk, if not probability, of amputation of her foot and ankle.

**Count One-Negligent Maintenance and Repair against All Defendants**

29. Plaintiffs repeat and incorporate here all prior allegations and paragraphs.

30. Plaintiffs J.V., Nora and B.V. were lawful invitees and passengers on the Macy's escalator at Garden State Plaza Mall on August 16, 2013.

31. On or about August 16, 2013, Macy's owned, operated, leased, supervised, managed, maintained and/or were charged with the duty of care and/or discharged its duty of care onto Defendant Thyssen, independent contractors, making said defendant, responsible for the design, upkeep, maintenance, and/or construction of any and all work done on the Macy's escalators, and responsible for securing and/or providing warnings and safeguards upon the

escalators and/or the work done at the property located at the Macy's store at Garden State Plaza Mall.

33. Defendants owed Plaintiffs a duty of reasonable care to avoid harm and prevent injury by their proper inspection, maintenance, repair and operation of the Macy's escalator.

33. Macy's owed Plaintiffs a duty of care because Macy's owned and operated the premises for its commercial benefit and invited Plaintiffs to shop at its store.

34. Thyssen owed Plaintiffs a duty of care directly because it had assumed responsibility for the inspection, maintenance, repair and upkeep of the Macy's escalators knowing of their intended use by Macy's customers.

35. Thyssen also owed Plaintiffs a contractual obligation as third party beneficiaries of Thyssen's contract with Macy's to service and maintain the escalators on its premises.

36. Defendants breached their duty of care to Plaintiffs through careless, negligent or reckless inspection, maintenance, repair and operation of the Macy's escalator.

37. Defendants' breach of their duty of care to Plaintiffs was a proximate cause or substantial contributing factor to the injuries Plaintiffs have suffered, and will continue to suffer, that include temporary and permanent pain, suffering, disability, loss of enjoyment of life, severe emotional distress, gratuitous services from friends and family to aid in the home health-care services necessitated by their injuries, and expenditure of monies and financial resources to pay for medical care.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally or in the alternative, for economic and noneconomic damages, together with interest and costs of suit.

### Count Two-Macy's Negligence in Its Supervision of Thyssen

38. Plaintiffs repeat and incorporate here all prior allegations and paragraphs.

39. Macy's, as owner and operator of its store at Garden State Plaza Mall, had a duty of reasonable care to monitor, supervise and inspect all work performed on its store escalators by Thyssen as part and parcel of Macy's duty of care to its customers.

40. Macy's knew or should have known that its escalator #2 had been improperly maintained or repaired by Thyssen's employees.

41. Macy's breached its duty to supervise Thyssen by carelessly, negligently or recklessly inspecting or supervising Thyssen's maintenance and repair work on the escalators.

42. Macy's breach of its duty of care to supervise and inspect Thyssen's maintenance and repair activities was a proximate cause or substantial contributing factor to the injuries Plaintiffs have suffered and will continue to suffer that include temporary and permanent pain, suffering, disability, loss of enjoyment of life, severe emotional distress, gratuitous services from friends and family to aid in the home health-care services necessitated by their injuries, and expenditure of monies and financial resources to pay for medical care.

**WHEREFORE**, Plaintiffs demand judgment against Macy's jointly, severally or in the alternative, for economic and noneconomic damages, together with interest and costs of suit.

### Count Three- Negligent Infliction of Emotional Distress
### Pursuant to *Portee v. Jaffee* against all Defendants

43. Plaintiffs repeat and incorporate here all prior allegations and paragraphs.

44. Nora Valdez is the natural mother of J.V. and B.V. is J.V.'s younger brother.

45. Both Nora and B.V. witnessed J.V. get her foot and leg trapped by the Macy's escalator.

46. Both Nora and B.V. watched as the continuous motion of the escalator ensnared more and more of J.V.'s ankle and lower leg.

47. Both Nora and B.V. watched as the escalator crushed J.V.'s foot and leg, heard J.V.'s screams of pain and cries for help, but were powerless to do anything to help her.

48. Both Nora and B.V. have suffered extreme emotional distress and mental anguish not only from witnessing J.V.'s devastating traumatic injury, but they have also witnessed her pain and suffering during the ambulance ride to the hospital and J.V.'s admission in the hospital emergency department, intensive care unit and post-surgical units as her doctors fought to save her leg through a series of surgical procedures.

49. Both Nora and B.V. have required medical care and counseling because of their distress and so incurred significant medical expenses.

50. Both Nora and B.V. Valdez are entitled to recovery for their extreme emotional distress and mental anguish pursuant to *Portee v. Jaffee*, 82 N.J. 295 (1980).

WHEREFORE, Plaintiffs Nora Valdez and B.V. demand judgment against all Defendants jointly, severally or in the alternative, for economic and noneconomic damages, together with interest and costs of suit.

## Count Four-Breach of Contract by Thyssen

51. Plaintiffs repeat and incorporate here all prior allegations and paragraphs.

52. Thyssen had a written agreement with Macy's to provide inspection, maintenance and repair services for the escalators located inside the Macy's store at Garden State Plaza Mall.

53. The principal purpose of that agreement was to operate and maintain the Macy's escalators for the convenience and benefit of May's customers and to facilitate their movement throughout the Macy's store.

54. Plaintiffs were third party beneficiaries of the agreement between Thyssen and Macy's as invitees and customers of Macy's.

55. Thyssen breached its contract with Macy's by carelessly, negligently or recklessly failing to properly inspect, maintain and repair the Macy's escalator that injured Plaintiff J.V.

56. Thyssen's breach of contract was a proximate cause or substantial contributing factor to Plaintiffs' injuries.

**WHEREFORE**, Plaintiffs demand judgment against Thyssen for all legally available contract damages, together with interest and costs of suit.

### Count Four- Parental Loss of Consortium and Services Against All Defendants

57. Plaintiffs repeat and incorporate here all prior allegations and paragraphs.

58. Plaintiffs Juan and Nora Valdez are the natural parents and guardians of their daughter J.V.

59. J.V.'s parents are entitled to the services and consortium that parents would typically expect from a child living in the same household.

60. Juan and Nora Valdez have lost the services and consortium of their daughter J.V. due to the Defendants' misconduct now and will continue to suffer this loss in the foreseeable future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally or in the alternative, for economic and noneconomic damages, together with interest and costs of suit.

### Count Five- Punitive Damages against Macy's

61. Plaintiffs repeat and incorporate here all prior allegations and paragraphs.

62. The Westinghouse Model 48L escalator that injured J.V. and her family is over 50 years old and was installed in the Macy's store at Garden State Plaza Mall at the time it was constructed in or about 1958.

63. On information and belief and as Plaintiffs expect further discovery will reveal, the Model 48L escalator possesses dangerous design flaws that manufacturers removed from escalator designs decades ago.

64. On information and belief and as Plaintiffs expect further discovery will reveal, Macy's is and has been aware of the defects and potential dangers of the Westinghouse escalator for years.

65. On information and belief and as Plaintiffs expect further discovery will reveal, Macy's knows that hundreds, if not thousands of accidents have occurred on its old Westinghouse escalators in the more than 850 Macy's stores scattered throughout the United States and North America.

66. On information and belief and as Plaintiffs expect further discovery will reveal, Macy's has over the years received recommendations from knowledgeable engineers and from its own employees that the old Westinghouse escalators should be replaced with newer, safer designs.

67. On information and belief and as Plaintiffs expect further discovery will reveal, Macy's has nonetheless chosen to disregard these recommendations as contrary to its own financial interests.

68. On information and belief and as Plaintiffs expect further discovery will reveal, Macy's has chosen not to abide these recommendations with wanton and willful disregard for the safety of its customers, including Plaintiffs here, knowing that its failure to act would, with a high probability, result in serious injury or death to its customers.

69. On information and belief, and as Plaintiffs expect further discovery will reveal, Macy's self-interested business choice not to replace obsolete and dangerous escalators in its

Garden State Plaza Mall store reflects a reckless indifference to the consequences of its corporate decision making.

70. On information and belief, and as Plaintiffs expect further discovery will reveal, the facts demonstrating the how and why the escalator ensnared, entrapped and injured J.V., together with the financial rationales Macy's used to justify its corporate decisions, will establish by clear and convincing evidence that Plaintiffs' injuries resulted from Macy's willful and wanton disregard of the foreseeable harm that befell J.V.

**WHEREFORE**, Plaintiffs demand judgment against Macy's pursuant to *N.J.S.A. 2A:15-5.9, et seq.* for punitive damages to penalize and to provide additional deterrence to Macy's to discourage similar conduct in the future.

### Count Six- Per Quod Claim by Juan Valdez

71. Plaintiffs repeat and incorporate here all prior allegations and paragraphs.

72. Plaintiff Juan Valdez is the lawful husband of Plaintiff, Nora Valdez and as such, is entitled to her services, consortium and society that a husband would typically expect from a wife living in the same household, and is responsible for her debts.

73. Juan Valdez has lost the services and consortium of his wife, Nora, due to the Defendants' misconduct now and will continue to suffer this loss in the foreseeable future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally or in the alternative, for economic and noneconomic damages, together with interest and costs of suit.

**Jury Demand**

Plaintiffs demand a trial by jury on all issues.

           _/s/ Samuel L. Davis_
        BY: Samuel L. Davis, Esq.
           Davis, Saperstein & Salomon, P.C.
           375 Cedar Lane
           Teaneck, New Jersey 07666
           201-907-5000
           201-692-0444 fax
           samuel.davis@dsslaw.com

Dated: October 8, 2013