NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.V.  BY HER GUARDIAN AD LITEM JUAN VALDEZ, AND JUAN VALDEZ, NORA VALDEZ, INDIVIDUALLY, AND B.V., BY HIS GUARDIAN AD LITEM JUAN VALDEZ  *Plaintiff*,  v.  MACY'S, INC., THYSSENKRUPPKRUPP ELEVATOR AMERICA, INC., JOHN DOE 1-10 (fictitious names), AND ABC CORP. 1-10 (fictitious names),  *Defendants*. | Civ. No. 13-5957 (KSH) (CLW)  OPINION |

**Katharine S. Hayden, U.S.D.J.**

I. **Introduction**

Plaintiff J.V., along with her brother, B.V. and her parents Juan and Nora Valdez sued Macy's, Inc. and ThyssenKrupp Elevator America, Inc. on theories of negligence and loss of consortium after J.V.'s foot was trapped in an escalator located in a Macy's store at Garden State Plaza in Paramus.  ThyssenKrupp has moved to dismiss the complaint in part. (ThyssenKrupp Mov. Br. at 8.)

II. **Background**

The complaint alleges that on August 16, 2013, J.V., then ten years old, along with her mother and her brother, visited a Macy's store in Garden State Plaza. (Compl. ¶¶ 3, 11, 15.) While they were riding an escalator in the store, J.V.'s right foot and leg got trapped. (*Id.* ¶¶ 15,

17-18.) As her brother looked on, J.V.'s mother attempted in vain to help J.V., who was extricated after a passersby hit the emergency stop switch and began to remove the escalator's metal plates and emergency personnel arrived. (*Id.* ¶¶ 11, 22-24.) J.V. was rushed to the hospital and has had 13 surgeries, including a skin graft and the insertion of an "external fixation device," in connection with efforts to save her foot and leg. (*Id.* ¶¶ 25-26.) J.V.'s pinky and second toes had to be amputated. (*Id.* ¶ 27.)

On October 7, 2013, the plaintiffs filed suit against Macy's, which owned and operated the store where the escalator was located, and ThyssenKrupp, the company allegedly responsible for maintenance of the escalator. (Compl. ¶¶ 5-6, 8.) The seven-count complaint, which was filed in federal court on the basis of diversity jurisdiction, alleges negligent maintenance and repair of the escalator (count one); negligence in Macy's supervision of ThyssenKrupp (count two); negligent infliction of emotional distress (count three); breach of contract (count four); parental loss of consortium (second count four);[1] punitive damages (count five); and a "per quod" claim for loss of consortium by Juan Valdez with respect to Nora (count six).

Plaintiffs' claim for breach of contract alleges that ThyssenKrupp and Macy's had a written agreement for ThyssenKrupp "to provide inspection, maintenance and repair services for the escalators located" in the Macy's store at Garden State Plaza; that plaintiffs were third-party beneficiaries of that agreement; and that ThyssenKrupp breached the agreement "by carelessly, negligently or recklessly failing to properly inspect, maintain and repair" the escalator that injured J.V. (Compl. ¶¶ 52-55.) Plaintiffs further allege that this breach "was a proximate cause or substantial contributing factor" to their injuries. (*Id.* ¶ 56.)

Plaintiffs Juan and Nora Valdez's claim for parental loss of services and consortium asserts that, as the parents and guardians of J.V., they are "entitled to the services and consortium

---

[1] The complaint erroneously contains two counts denominated as "count four."

that parents would typically expect from a child living in the same household," and that they have lost both as a result of the defendants' alleged misconduct. (Compl. ¶¶ 58-60.)

Macy's filed an answer on December 9, 2013, and asserted a cross-claim against ThyssenKrupp seeking, *inter alia*, contribution and/or indemnification. (D.E. 6.) ThyssenKrupp filed its partial motion to dismiss on December 18, 2013, appending to it three pages of a document entitled "Macy's Vertical Transportation Agreement" ("MTVA"). (ThyssenKrupp Mov. Br. at 8.) ThyssenKrupp seeks dismissal of the breach of contract claim (count four), which is asserted against it only, and the parental loss of consortium claim (second count four) as to it. ThyssenKrupp argues that the breach of contract claim must fail because the plaintiffs were not intended beneficiaries of the maintenance agreement between ThyssenKrupp and Macy's. (*Id.* at 5.) As to the claim for parental loss of consortium, ThyssenKrupp argues that New Jersey law does not permit recovery for loss of consortium of a minor child resulting from negligently inflicted harm. (*Id*. at 9-10.)

Macy's opposes dismissal of plaintiffs' breach of contract claim, and supports dismissal of the claim for parental loss of consortium and services. (Macy's Opp. Br. at 2.) Macy's argues that it cannot yet be determined whether plaintiffs were intended third-party beneficiaries of the contract. (*Id.* at 4-7.) As to the parental loss of consortium claim, Macy's agrees with ThyssenKrupp that New Jersey law does not permit recovery on the basis of negligence. (*Id*. at 3.)

**III.   Discussion**

  **A. Standard of Review**

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must "plausibly" plead a claim for relief. The complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible," which "'then allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When considering a motion to dismiss, a court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. Determining what is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211. If the Court cannot infer from the factual allegations pled that the defendant has acted unlawfully, the case cannot justifiably be moved "beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008).

**B. Breach of Contract Claim – Are Plaintiffs Third Party Beneficiaries?**

The Court initially addresses an issue debated by the parties: may the three page excerpt from the MTVA that ThyssenKrupp relies on in making its motion to dismiss plaintiffs' breach of contract claim be considered at all? J.V. urges the court to ignore the excerpt as extrinsic, falling outside of the complaint, and because it is an incomplete representation of the contract. In the alternative J.V. suggests that because ThyssenKrupp made the submission its motion should be converted to a summary judgment motion with discovery put in place to accommodate an appropriate response.

It is not rocket science to figure out why ThyssenKrupp proffers the excerpt. It reads in part, "[t]he only third party beneficiaries to this Agreement are the Affiliates of Owner." (ThyssenKrupp Mov. Br., "MTVA" at 25)  Arguably were this portion of the contract competent

as a submission, ThyssenKrupp would go far in persuading the Court that the plaintiffs were in no wise third-party beneficiaries of the MTVA and their breach of contract claim would fail.  But ThyssenKrupp itself recognizes that the Court needs more than a peek:  "the court should take into account the general purpose of the contract as a whole."  (ThyssenKrupp Mov. Br. at 6) (citing, *Grant v. Coca-Cola Bottling Co. of N.Y., Inc*, 780 F. Supp. 246, 248 (D.N.J. 1991).)

To be sure, J.V. adequately pleads the plaintiffs' breach of contract theory. (Compl. ¶¶ 34-36; ¶¶ 51-56.)   As Magistrate Judge Schneider wrote in *McLane Foodservice, Inc. v. Ready Pac Produce, Inc*., to substantiate the claim, a plaintiff must demonstrate that the relevant contract was "made for the benefit of [that] third party within the intent and contemplation of the contracting parties."  No. 10-6076, 2012 WL 2462291 *7 (D.N.J. June 27, 2012) (citing and quoting *Grant v. Coca–Cola Bottling Co. of N.Y., Inc.,* 780 F. Supp. 246, 248 (D.N.J.1991).)  If "the parties to the contract intended others to benefit from the existence of the contract," then third-party beneficiary rights apply, but if "the benefit so derived arises merely as an unintended incident of the agreement," then "the third person is only an incidental beneficiary, having no contractual standing."  *Broadway Maint. Corp. v. Rutgers, the State Univ*., 90 N.J. 253, 259 (1982).

To determine intent, courts "examine the terms of the agreement and the surrounding circumstances." *Grant,* 780 F.Supp. at 249.  Establishing status as a third party beneficiary requires a plaintiff to demonstrate that the contracting parties did more than act "against a backdrop of knowledge" that the plaintiff would benefit from the agreement.  *Corrugated Paper Prods., Inc. v. Longview Fibre Co*. 868 F.2d 908, 912 (7th Cir.1989).  "The plaintiff must show that the benefit to plaintiff was a consequence which the parties affirmatively sought." *Id.*

The foregoing cases demonstrate that a debate about, let alone a determination of intent is impossible at this point, and certainly not on the basis of an excerpt from the contract at issue. ThyssenKrupp's suggestion that it give the Court the entire contract, now, misses the point. The MTVA should be provided in discovery. The cases ThyssenKrupp cites in its moving papers were decided on records that were fully developed through discovery and in one case, after trial. In short, and as Macy's has argued, ThyssenKrupp has filed a motion to dismiss the count for breach of contract that is at best premature. It is denied.

C. **Parental Loss of Consortium and Services Claim**

Plaintiff's claims for both parental loss of consortium and services are premised on the assertion that Juan and Nora Valdez, as the parents of J.V., are "entitled to the services and consortium that parents would typically expect from a child living in the same household," and that they have lost both as a result of the defendants' alleged misconduct. (Compl. ¶¶ 58-60.) Significantly, plaintiffs assert the cause of the harm was defendants' negligence only, and do not indicate any intentional action by either party as causing injury.

Under New Jersey law, the loss of *consortium* of a minor child resulting from defendant's negligence does not provide the right to recovery by parents. However, parental loss of *services* of a minor child resulting from defendant's negligence is a viable *per quod* claim. *Gould ex rel. Gould v. TJX Companies, Inc.,* No. 11-288, 2013 WL 1288167, at *5 (D.N.J. Mar. 26, 2013) (Hillman, J.); *see also*, *Tynan v. Cruzi*, 332 N.J. Super. 267, 272 (Super. Ct. App. Div. 2000). In *Tynan* the court refused to allow parents recovery for loss of companionship and society in negligence actions, but cited with approval a lower court case that distinguished intentional tort cases, such as common law seduction of a child, where such recovery had been allowed. 332 N.J. Super. at 272; (citing *Brennan v. Biber,* 93 N.J. Super., 351, 366.) Otherwise, where a child

is injured a parent "may not recover for loss of consortium of that minor child" but is "limited to damages for loss of the child's past or future service." *Brennan,* 93 N.J. Super., at 366.

This distinction between loss of service and loss of consortium has its roots in the common law developed when children "began working on the family farm or appeared at the minehead or factory gate as early as age 10." *Siciliano v. Capitol City Shows*, 124 N.H. 719, 737 (1984) (Douglas, J. dissenting). While many states have moved beyond the pecuniary calculation of a parent's loss, New Jersey remains off-trend in prohibiting loss of consortium claims.[2] The Court will follow New Jersey's rulings and accordingly, ThyssenKrupp's motion to dismiss is granted in part and denied in part. Insofar as plaintiff's *per quod* claim is for parental loss of consortium, the motion to dismiss is granted; however, as New Jersey law does allow *per quod* claims for parental loss of services of a minor child in a negligence action, defendant's motion for dismissal of that claim is denied.

IV. <u>Conclusion</u>

For the foregoing reasons, ThyssenKrupp's motion to dismiss is DENIED in respect to count four part one, plaintiffs claim for breach of contract as third-party beneficiaries, as well to count four, part two, plaintiffs *per quod* claim for parental loss of services; dismissal is GRANTED as to the *per quod* claim for parental loss of consortium in count four part two. An appropriate order will be entered.

/s/ Katharine S. Hayden

---

[2] Courts have recognized per quod loss of consortium of child claims from parents in: *Hair v. County of Monterey,* 45 Cal.App.3d 538 (Ct. App. 1975) (California), *Shockley v. Prier*, 66 Wis. 2d 394 (Sup. Ct. 1975) (Wisconsin), *Sizemore v. Smock*, 155 Mich. App. 745 (Ct. App. 1986) (Michigan), *Reben v. Ely*, 146 Ariz. 309 (Ct. App. 1985) (Arizona), and more.

7

Date: September 30, 2014                                        Katharine S. Hayden, U.S.D.J.

8